IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Fire and Casualty Company *and* Maurice Lavon Robinson, | ) ) ) | Civil Action No. 4:15-2745-RMG |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| Admiral Insurance Company, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the Court on Defendant Admiral Insurance Company's ("Admiral")
motion to compel Plaintiff State Farm Fire and Casualty Company ("State Farm") to produce
certain documents. For the reasons given below the motion is granted in part and denied in part.

## I. **Background**

Mr. Robinson alleges that that Admiral's failure to defend and to indemnify him in an
underlying lawsuit was a bad-faith breach of contract. In the underlying lawsuit, James McElveen
sought redress for significant physical injuries that he suffered at a fraternity hazing event hosted
in Mr. Robinson's home. Admiral provided liability coverage for the fraternity, Phi Beta Sigma,
and the fraternity's national president, Jimmy Hammock. State Farm provided homeowner's
coverage for Mr. Robinson. State Farm retained James Hoffmeyer to defend Mr. Robinson. Mr
Robinson retained Henry Anderson as his personal counsel regarding the hazing event; Mr.
Anderson represented Mr. Robinson in the related criminal case.

Admiral agreed to settle Mr. McElveen's claims against Phi Beta Sigma and Mr. Hammock
for $500,000 (half of its $1,000,000 "Each Occurrence" policy limit). Mr. Robinson was not
included in that settlement. State Farm rejected a settlement offer of $300,000 (its policy limit)
and instead chose to go to trial. Mr. McElveen won a $1,584,000 judgment. State Farm ultimately

paid $975,000 to settle that judgment. Mr. Robinson filed this bad-faith action within the Court's diversity jurisdiction, claiming that he was an insured under the Admiral policy and therefore should have been included in the Admiral settlement. State Farm joined his action to seek recovery for the amounts it paid.

Admiral asserts that State Farm's February 24, 2016 responses to Request for Production numbers six ("RFP 6") and seven ("RFP 7") are deficient. State Farm responds that the documents in question are privileged from production by the attorney-client privilege or work product doctrine. Admiral now moves to compel State Farm to produce documents responsive to those requests, and to produce certain other documents itemized on State Farm's privilege log.

## II.   Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure states:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 683 (4th Cir. 1986); *Middleton v. Nissan Motor Co.*, Civ. No. 10-2529, 2012 WL 3612572, at *2 (D.S.C. Aug. 21, 2012).

## III.   Discussion

### A.   The Attorney-Client Privilege and Work Product Doctrine

In diversity cases, the application of the attorney-client privilege is governed by state law—in this case, the law of South Carolina. Fed. R. Evid. 501; *Hottle v. Beech Aircraft Corp.*, 47 F.3d

-2-

106, 107 n.5 (4th Cir. 1995). "The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." *State v. Owens*, 424 S.E.2d 473, 476 (S.C. 1992). "[T]he burden of establishing the [attorney-client] privilege rests upon the party asserting it." *Wilson v. Preston*, 662 S.E.2d 580, 585 (S.C. 2008).

Federal law governs the work product doctrine. The doctrine protects from discovery any "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party claiming work product protection has the burden of establishing entitlement to the protection. *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988). By the plain text of the Rule, an insurer may claim the protection of the work product doctrine—an attorney-client relationship is unnecessary.

For the work product doctrine to apply, "[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). The proponent of work product protection must establish that the "driving force behind the preparation of each requested document" is the prospect of litigation. *Id.*

There are two types of work product: opinion work product and ordinary work product. Opinion work product involves "mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation [and] is immune to the same extent as an attorney-client communication. This is so whether the material was actually prepared by the attorney or by another representative of the party." *Id.* at 984 (internal quotation marks and citations omitted). Ordinary work product, or "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial[,]

-3-

may be discovered, but only on a showing of substantial need." *Id.* (internal quotation marks omitted).

Attorney-client privilege and work product protection are ordinarily waived by a voluntary disclosure of protected materials to a third party. *Marshall v. Marshall*, 320 S.E.2d 44, 46–47 (S.C. Ct. App. 1984) ("Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed, but also to all communications between the same attorney and the same client on the same subject."); *see also State v. Thompson*, 495 S.E.2d 437 (S.C. 1998)   However, the common interest doctrine is

> an exception to the waiver of an existing privilege.  The doctrine "protects the transmission of data to which the attorney-client privilege or work product protection has attached" when it is shared between parties with a common interest in a legal matter.  It is an exception to the general rule that disclosure of privileged information waives the applicable privilege.  Thus, information covered by the common interest doctrine cannot be waived without the consent of all parties who share the privilege

*Tobaccoville*, 692 S.E.2d 526, 531 (S.C. 2010) (citations omitted).  The Court previously ruled that the common interest doctrine applies under South Carolina law to a confidential relationship between an insurer, an insured, and counsel retained by the insurer for the insured. (Order 6, Dkt. No. 24.)

It is also possible to waive the privilege implicitly by voluntarily placing communications with counsel at issue. *See Floyd v. Floyd*, 615 S.E.2d 465, 483 (S.C. Ct. App. 2005) (finding an implied waiver of privilege by making communications with counsel an issue), *superseded by statute on other grounds*, 2008 S.C. Acts 211, § 1 (adding section 62–1–110 to the South Carolina Code, providing communications between a lawyer and a fiduciary are subject to the attorney-client privilege unless waived by the fiduciary, even if fiduciary funds were used to compensate the lawyer).  This reflects the rule that "[a] litigant cannot complain of prejudice by reason of an issue he has placed before the court." *Frazier v. Badger*, 603 S.E.2d 587, 592 (S.C. 2004).

However, implicit waiver must be "distinct and unequivocal." *Thompson*, 495 S.E.2d at 439.

## B.    Request for Production Number Six

Admiral seeks to compel production of written correspondence between State Farm and Mr. Robinson that explains settlement demands made by Mr. McElveen or that discusses the consequences of refusing such settlement demands. State Farm claims that such correspondence is protected by the attorney-client privilege and the work product doctrine, and that under the common interest doctrine protection was not waived when the correspondence was shared with Mr. Robinson.

Admiral's motion makes much of the boilerplate language in State Farm's objections to RFP 6. (*See* Mem. Supp. Mot. Compel 4, June 6, 2016, Dkt. No. 37-1; Reply Supp. Mot. Compel 1–2, June 21, 2016, Dkt. No. 41 at 1–2.) It is true that a boilerplate objection standing alone waives any actual objection. (*See* Order 13–14, Dkt. No. 24.) But State Farm's relevant objections concern the attorney-client privilege, the work product doctrine, and the common interest doctrine; those objections are not boilerplate. Moreover, the Court is aware that Admiral and State Farm corresponded concerning these objections. (*See* Letter from Linda Gangi to Wesley Sawyer, May 13, 2016, Dkt. No. 40-2.) Nor is Admiral's attempt to distinguish documents based on whether they are considered part of a "claims file" relevant to the Court's analysis. Nothing in the request for production itself distinguishes responsive documents according to whether they are considered part of the claims file. The Court's only concern is whether or to what extent the attorney-client privilege or work product doctrine protects responsive documents from production. How State Farm labels its files is irrelevant.

State Farm and Mr. Robinson clearly shared a "common interest in a legal matter"—the underlying tort litigation—because State Farm was defending Mr. Robinson in that litigation. *Cf. Tobaccoville*, 692 S.E.2d at 531. The common interest doctrine applies. Communications from

State Farm's counsel to Mr. Robinson about the underlying litigation are privileged. Direct communications not involving legal counsel from State Farm to Mr. Robinson are not privileged, but are protected by the work product doctrine. Fed. R. Civ. P. 26(b)(3)(A) (work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its . . . insurer . . . ."). Admiral seeks documents "explaining" settlement options and the "potential risks or consequences" of a refusal to settle. Any work product responsive to that request is, by definition, opinion work product: mental impressions, conclusions, or opinions created in anticipation of litigation (here, opinions and conclusions about whether to go to trial instead of settling). *Nat'l Union Fire Ins.*, 967 F.2d at 984 (4th Cir. 1992). Opinion work product is protected to the same extent as if it were privileged—Admiral cannot discover opinion work product by demonstrating a "substantial need" for the documents. *Id.*

Under South Carolina law, waiver may be implied where a party places its communications with counsel at issue. *See Floyd*, S.E.2d at 484. Plaintiffs' complaint does not place the requested communications at issue: State Farm's decision-making in the defense Mr. Robinson does not bear on the question of whether Admiral should have defended Mr. Robinson. *Cf. Botkin v. Donegal Mut. Ins. Co.*, Civ. No. 5:10-77, 2011 WL 2447939, at *4 (W.D. Va. June 15, 2011) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). Admiral asserts a counterclaim "for contribution based upon State Farm's conduct" (Answer ¶¶ 49–66, Sept. 15, 2015, Dkt. No. 12), but Defendant's counterclaim cannot waive Plaintiffs' attorney-client privilege or work product protection, *see Thompson*, 495 S.E.2d at 437 ("The attorney-client privilege belongs solely to the client and can only be waived by the client."). However, Plaintiffs' answer to Admiral's counterclaim states,

> The Plaintiffs admit so much of the allegations of paragraph 56 as it states that State
> Farm Fire and Casualty Company owed a duty to act in good faith and reasonably

in handling the claim brought by Daniel C. McElveen against the Plaintiff Maurice
Lavon Robinson and *asserts that it did so*.[1]

(Dkt. No. 13 ¶ 6 (emphasis added).)  The italicized language waives privilege and work product

protections concerning documents responsive to RFP 6.  *City of Myrtle Beach v. United Nat. Ins.*

*Co.*, Civ. No. 4:08-1183, 2010 WL 3420044, at \*5 (D.S.C. Aug. 27, 2010) (holding that an

insurer's privilege claim failed because the insurer had put its communications with counsel at

issue by asserting reasonableness and good faith in its answer to bad faith allegations); *see also*

*Hege v. Aegon USA, LLC*, Civ. No. 1:10-635, 2011 WL 1791883, at \*5 (D.S.C. May 10, 2011).

The Court therefore grants the motion to compel as to RFP 6.

## C.    Request for Production Number Seven

The Court held previously that communications between an insurer, the insured, and the

attorney retained by the insurer to defend the insured are privileged.  (Order 6, Dkt. No 24.)  Jim

Hoffmeyer is the attorney retained by insurer State Farm to defend the insured Maurice Robinson.

Communications between State Farm and Mr. Hoffmeyer therefore are privileged from

production, unless that privilege has been waived.  Henry Anderson is Mr. Robinson's personal

counsel in this matter; he also represented Mr. Robinson regarding criminal charges arising from

the alleged hazing incident.  Admiral speculates "it *appears* that [Mr. Anderson] represented [Mr.]

Robinson in his dealings with State Farm on the coverage issues" and was therefore "adverse" to

State Farm simply because Mr. Anderson did not represent Mr. Robinson in the underlying tort

case.  (Mem. Supp. Mot. Compel 5 (emphasis added).)  The Court cannot blithely assume that the

lawyer defending Mr. Robinson against criminal charges was adverse to the insurance company

---

[1] Paragraph 56 of the Answer makes no assertion that State Farm acted in good faith, so "assert[]"
must be construed as parallel to "admit": Plaintiffs admit that State Farm had a duty to act in good
faith and assert that State Farm did act in good faith.

defending Mr. Robinson from tort claims arising from the same incident. To the contrary, it appears that Mr. Anderson, Mr. Hoffmeyer, Mr. Robinson, and State Farm all shared a common interest in legal proceedings arising from the same alleged hazing. Communications between State Farm and Mr. Anderson are also privileged from production, unless that privilege has been waived.

However, any privilege regarding communications from Mr. Hoffmeyer or Mr. Anderson to State Farm that explain settlement demands made by Mr. McElveen or discuss the consequences of refusing such settlement demands has been waived for same reason that privilege regarding such communications to Mr. Robinson has been waived because Plaintiffs' answer to Admiral's counterclaim opens the door. The Court therefore grants the motion to compel as to RFP 7 for those documents that discuss pretrial settlement of the underlying tort action, and otherwise denies the motion.

### D.    Disputed Privilege Log Items

Admiral also moves for the production of the documents detailed below, which the Court has reviewed *in camera.* As explained below, except for a redaction of to document, all must be produced.

Bates 267–69; 271–73: These are standard-form reservation of rights letters, generated in the ordinary course of business nearly one year before the underlying tort suit was filed. They are not covered by the work product doctrine and must be produced.

Bates 912: This is a February 2012 email exchange between two non-attorney State Farm employees, regarding transmission of standard form reservation of rights letters to Mr. Robinson. This document is not covered by the work product doctrine and must be produced.

Bates 962–63, 965–66:[2] These are copies of a March 28, 2014 assurance letter from a State Farm manager to Mr. Robinson, informing him that Mr. McElveen had rejected a settlement offer from State Farm, that State Farm had rejected a settlement offer from Mr. McElveen, and that State Farm had decided to go to trial instead of settling the claim, and that State Farm would protect Mr. Robinson from any excess verdict. These letters are opinion work product, but, because they are responsive to RFP 6, that protection has been waived and they must be produced. Plaintiffs also claim attorney-client privilege. It is not clear how that privilege could apply to a letter from a manager at State Farm to its insured, informing him of a decision taken by State Farm, but if it were applicable, it also would be waived.

Bates 964: This is an email from State Farm forwarding Bates 962–63 to Mr. Anderson, Mr. Hoffmeyer, and Mr. Hoffmeyer's assistant. It provides a brief description of the letter, which could be considered work product, but must be produced for the reasons given regarding Bates 962–63. Again, Plaintiffs also claim attorney-client privilege, which appears to be inapplicable but would be waived regardless.

Bates 1268, 1289:[3] These are copies of a January 21, 2014 cover letter from Mr. Hoffmeyer to Mr. Anderson, forwarding a letter from Mr. McElveen's attorney to Mr. Anderson without any description or comment. This document does not seek, communicate, or reference any legal advice. Forwarding a letter without comment is an act done in the regular course of business. *See Simon v. G.D. Searle*, 816 F.2d 397, 401 (8th Cir. 1987) ("[E]ven though litigation is already in

---

[2] Plaintiffs' revised privilege log (Dkt. No. 40-1) describes Bates 962–63 as a letter dated March 8, 2014 and provides a different log description than provided for Bates 965–66. Bates 962–63 as provided to the Court for *in camera* review are identical to Bates 965–66.

[3] Bates 1289 as provided to the Court for in camera review is a copy of 1268, identical except that a numeric stamp appearing on 1268 is missing from 1289. Plaintiffs' revised privilege log (Dkt. No. 40-1) describes Bates 1289 as a continuation of Bates 1287–88.

prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation."). This letter is not privileged or covered by the work product doctrine and must be produced.

Bates 1287–88: This is a plain text rendering of HTML-format emails. The text is barely legible and does not make clear to whom they were sent, but it is reasonable to assume that it was sent to the persons listed in the "cc" field of Bates 1268. The text appears to refer to that letter, the dates correspond, and the email thread was started by a photocopier presumably used to scan that letter. This does not seek, communicate, or reference any legal advice, and was prepared in the regular course of business. It is not privileged or covered by the work product doctrine and must be produced.

Bates 1290:[4] This is a cover letter from Mr. Hoffmeyer to Mr. Robinson, forwarding the letter forwarded under Bates 1268 and 1289. Unlike those letters, this letter contains privileged legal advice from Mr. Hoffmeyer to Mr. Robinson. However, this advice concerns the potential risks and consequences of refusing to settle. Privilege has been waived for the reasons set forth above. This document must be produced.

Bates 1318: This is an email from Mr. Hoffmeyer's assistant to State Farm, forwarding to Bates 1319. It must be produced for the reasons given regarding Bates 1319.

Bates 1319:[5] This document is a January 14, 2014 letter from Mr. Robinson's State Farm-retained attorney to Mr. Robinson's personal attorney, discussing the failure of settlement

---

[4] Bates 1290 as provide to the Court for in camera review corresponds to the description provided by Plaintiffs' revised privilege log (Dkt. No. 40-1) for Bates 1266. The privilege log describes Bates 1290 as a continuation of Bates 1287–88.

[5] Once again, this document does not correspond to the description given by Plaintiffs' privilege log (this is described as being the same as Bates 1318 and 1320).

discussions and the decision to go to trial. This document is privileged, but, because privilege has been waived for the reasons set forth above, this document must be produced.

Bates 1320: This document is an email forwarding Bates 1319 to State Farm. It must be produced for the reasons given regarding Bates 1319.

Bates 1401: This document is a letter from Mr. Anderson to State Farm. It apparently refers to settlement communications with counsel for Mr. McElveen, and, therefore, it must be produced for the reasons given above. This letter also discusses contains opinion work product regarding matters not placed at issue by Plaintiffs' answer to Admiral's counterclaim. Plaintiffs therefore may redact the third paragraph as opinion work product.

IV.    **Conclusion**

For the foregoing reasons, Defendant's motion to compel (Dkt. No. 37) is **GRANTED IN PART AND DENIED IN PART**. The motion to compel is **GRANTED** as to Request for Production Number Six, **GRANTED IN PART AND DENIED IN PART** as to Request for Production Number Seven, **GRANTED** as to those documents identified as State Farm Bates numbers 267–269, 271–273, 912, 962–966, 1268, 1287–1290, 1318–1320, and **GRANTED IN PART** as to State Farm Bates number 1401.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July 25, 2016
Charleston, South Carolina

-11-